The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon. This is case number 4-22-0669, Thomas Nord versus Residential Alternatives of Illinois et al. Counsel, could you state your appearances for the record? Donna Fudge for the defendants. Good afternoon, Justices. My name is Amanda Hamilton and I represent the plaintiff appellee in this matter. All right. Very good. Thank you. Ms. Fudge, are you ready to proceed? I am. You may. May it please the court. I want to begin with the three things that the trial court did right in this case before they made their error. First, the trial court was correct on the issue of contract formation in concluding that there was a making of an agreement to arbitrate. Second, the court was correct in concluding that that subject arbitration agreement is governed by the Federal Arbitration Act. And third, the court was correct in recognizing that the arbitration agreement contained a delegation clause via the incorporation of the AAA rules. In fact, the court even cited verbatim Rule 7 of the AAA rules. But then the court made its error and that error was failing to appreciate that the state never made a challenge specifically directed to that delegation clause. And therefore, the court was left with no choice but to find the delegation clause valid and enforce it under sections two and three of the FAA. Counsel, I have a question. The first sentence of the contract, which is titled term, states that the contract terminates, quote, the day the resident is discharged, unquote. Do you dispute that Naomi was discharged upon her death on December 15, 2018? Well, no, not the way the word discharge is used in the nursing home context, Your Honor. In fact, she remained at the nursing home until her death. So it wasn't like she was discharged out to home or to a hospital or to another nursing home and died there. She remained at my client's nursing home and therefore she was not discharged. So the term of the contract doesn't apply, but it remains. Contract terminates for the date the resident was discharged. Even when she died, the contract didn't terminate. I think that's correct. And I also think we have to remember that the estate belatedly made this argument about termination, number one. And this court, with all due respect, is without jurisdiction to even engage in this issue of the termination argument. Because number one, under the Buckeye rule, the estate is using this termination argument as an attack on the enforceability of the contract as a whole. And we know from Buckeye that attacks on the contract as a whole must be left to the arbitrator. Secondly, our agreement that we are seeking to compel is the delegation clause. That was not specifically attacked and therefore it's valid and enforceable. And under our delegation clause, all issues about the enforceability of this contract must be left to the arbitrator. Counsel, can you, excuse me, I just want to ask you specifically about something you just said. You said that we're without jurisdiction to address these matters. What do you mean? What I mean is that this agreement was correctly found to be under the FAA. That means that the Federal Arbitration Act's entire federal substantive body of law on the issue of arbitrability applies in this court as a state court with equal force as if it would if we were a federal court. And therefore, under that FAA body of law, once my client moved to compel under the delegation clause, and the court found that there was the making of the agreement under the FAA with that delegation clause, and the estate failed to make a specific attack on the delegation clause, under Renta Center and Henry Schein, the court's work was done. The court was mandated at that moment to respect the delegation clause and to enforce the delegation clause. But there wouldn't be anything from a jurisdictional standpoint preventing us on appeal from adopting the appellee's argument that termination of the contract terminated the arbitration agreement as well from a jurisdictional standpoint, is that correct? I disagree with you because under Renta Center, when Mr. Jackson failed to make an attack on the delegation clause specifically, the United States Supreme Court was very clear. That was a fatal mistake by Mr. Jackson. It was too late for Mr. Jackson to raise that challenge at the appellate level. His failure to attack the delegation clause at the trial court level left the court with one choice and one choice only. The United States Supreme Court said, number one, the court must find the delegation clause valid under Section 2 of the FAA, and it must enforce it under Sections 3 and 4 of the FAA and compel the case to arbitration. I think this court is left with no other choice but that, and that means that this court does not have jurisdiction to engage in this argument of termination. Is the arbitration provision a separate contract or an addendum to the contract that the parties entered into? It is an addendum, sir. The arbitration provision contains no language stating it survives the termination of the contract, does it? It is silent on whether or when it might terminate, correct? Well, is there any reason to believe that, assuming that the death of Naomi amounts to a discharge, and I don't know how it could be disputed, then why doesn't that mean that the contract and all its provisions terminated at that point as well? Well, I guess logically you'd have to die first and then be discharged. I mean, even if it's just a few moments in between the two, which means that at the moment of death, you're not discharged yet. So that's just kind of a logical argument I would make. And I also want to make it clear that... So death doesn't constitute a discharge under the contract? Well, again, we're engaging in interpretation of the contract. And we have to keep in mind, even when we don't have a delegation clause, your decision in Mason, the Illinois Supreme Court decision in Donaldson v. Barr says, even without a delegation clause, contract interpretation must be left to the arbitrator. So we should not even be... Let's assume for the moment we disagree and respond to the questions I'm specifically asking. The question is specifically, can the arbitration provision survive the termination of this contract without any language saying it will survive the termination? It could have been put in, but it wasn't. So absent that language, does this arbitration language survive the termination of the contract? It does, yes. And the reason is, we cited to the case of Litton, which is a United States Supreme Court 1991 case that recognizes that the duty to arbitrate under a contract survives the death of one of the parties. And that makes common sense as well. And that's particularly true where you're dealing with a contract like this, that is not a personal service contract. So under our type of contract, yes, the arbitration agreement can and does survive the death of the resident. Your client broke the contract. This is essentially an adhesion contract. Why shouldn't any uncertainties about how it should be viewed be viewed in a light most favorable to the patient and against your client? I think we're getting a little bit into the issue of a scope. Does the scope of this arbitration agreement include her fall and fracture that happened while she was alive? And does it include issues that happened up until the death? And that is a scope debate. And under the FAA federal substantive law of arbitrability, again, under our delegation clause, scope is to be left to the arbitrator. But even if it weren't, all doubts, and I stress all doubts regarding the scope of an arbitration agreement are to be resolved in favor of finding arbitrability and not against. And counsel in that regard, and I know there's citation to case law that we got to be careful about creatively using terms to differentiate between the creation of the contract versus the validity of the contract, but the existence of the contract. I want to use that word very carefully here, the existence of the contract. Are we talking about the existence of the arbitration agreement? Assuming that the contract terminated, and I'm talking about the nursing home contract terminated at the time of death, did the arbitration agreement no longer continue to exist at that point? So that, you know, and now we're talking about this being an issue for the court to decide versus an issue for the arbitrator to decide? So first, keep in mind that we moved to compel just under the delegation clause. And yes, there is an existence of that delegation clause, which under the severability rule of Buckeye stands on its own. That delegation clause is its own agreement to arbitrate. So you're right, you shouldn't be looking at the underlying admission contract and what it says about termination. The eyes of the court should be focused on the delegation clause. The delegation clause says nothing about how long it remains in place, when it terminates, if it ever terminates. And for those reasons, I think that this entire case needs to be compelled into arbitration. Counsel, I'm sure you're familiar with the recent decision of the first district in Clanton versus Oakbrook Healthcare, which the court there held that the essentially the same sort of issue we have here, that the arbitration provision was part of the contract and the contract terminated on the death of the decedent. Why shouldn't this court follow Clanton? First, Clanton, although it did incorporate the Jams rules, which the Jams rules do have a delegation clause, I want to make this point. Nobody in the Clanton court in that case ever asked that the delegation clause be triggered. My client has asked that the delegation clause be triggered. So that alone distinguishes our case from Clanton. Also, our arbitration agreement is an addendum to the underlying admission contract. In Clanton, it was part of the contract. I was just going to ask to pause a second. Why should that make a difference? I mean, don't we have to read both of them together? The addendum and the contract? Well, with all due respect, no, because again, once there's the making of an agreement to arbitrate with a delegation clause, and that delegation clause has not been challenged specifically by the estate, we shouldn't be engaging in any sort of interpretation here and construction of the underlying agreement with the arbitration agreement. And the other point I want to make is that in Clanton, there's another distinguishing fact. In Clanton, the contract said that it terminated on the death of that resident. Our underlying contract says that it ends or it terms at discharge. Those are two different words, death and discharge. That's my first question I asked your counsel. Do you dispute that when she died, she was discharged with the meaning of this contract? And I, I think I, logically to me, if I die right now, you haven't discharged yet, I'm still in my bed, for example, that I have passed away in. So with all due respect, I do think there's a distinction between the moment of death. And once your body is charged from the nursing home facility address our Dallas is the administrator of the manner of court issue. I don't. I think it's Yes, it's a gentleman. Yes. Oh, I'm sorry. Well, well, there's an affidavit that he provided. Attached to manner courts motion to compel arbitration, in which he says in paragraph to Naomi Nord was admitted as a resident to manner court October 10 2016. Miss Nord remained at manner court until she was discharged on December 15 2018, unquote, that of course was the date of her death seems to me like the position of your client wasn't involved in these philosophical issues of his discharge a death or the seems to me to be pretty obvious that when you die, you discharged within the contract. Well, first, there's there's no conflict here. This affidavit doesn't mention death, we know from the complaint which is in your record that she did die on the 15th. She died in the nursing home term is discharge says the contract continues until discharge. And you're the manager here, Andres for Dallas said was Lord paragraph to remain in manner court until she was discharged on December 15 2018. Your exhibit number one. That's the date she died. So essentially aren't we in a situation where you're not disputing she was discharged upon her death on December 15. I'm saying Your Honor, that she has no answer comes. She died, and then her body was removed and discharged from the nursing home she wasn't discharged and then died and I think that that's an important sequence, your situation is in your position before the trial court, you did not dispute that she was discharged on December 15 2018. Isn't that correct. Yeah, but she died first before she was discharged. So that means the discharge is a no effect. Well, her cause of action for wrongful death accrued at the moment of death. So that means that her survival action for when she fell and had her fracture existed while she was still a resident so it's under the arbitration agreement, and at the moment of death. She was still in the nursing home and so her wrongful death cause of action accrued, while she was still in the nursing home. So if we view this as her death is the equivalent of discharge as a lead. Mr. Vidal said, do you lose. I don't think so. I don't see how discharge could precede death. And even if they happen at the same time, the cause of action accrued at that same time. So, either way, her negligence survival claim, and the wrongful death claim all accrued while she was still a resident and therefore both claims are issue is whether or not the arbitration provision survives the termination of the contract, isn't it. So there's no question of seconds or minutes. If she dies and that's amounts to a discharge. Then, subsequent to her death and discharge. The contract which calls for arbitration, which was then terminated no longer applies doesn't know incorrect under the Lytton case the duty to arbitrate survives the termination of the contract. And again arbitration agreement is just another provides for no such language. Even if you could have put it in, saying that the arbitration agreement survives the death of the decedent or discharge. Yeah, because it's basic contract law that applies here to an arbitration agreement. And in this situation the arbitration agreement and the delegation clause is silent. So with all due respect, you're trying to write words into a contract that just aren't there and I don't think regular general contract law allows courts to do that and it wouldn't allow us to add words to this arbitration agreement, including adding words to the delegation clause that simply aren't there. If discharge is, if, if, if you just assume what Justice Steigman suggested there, but when she died that was the same as discharge, and the contract terminated. Does that make this case just like Mason. No, it doesn't. Because again, Mason did not have a delegation clause. We have a delegation clause, we have specifically asked that this case be compelled to arbitration under that delegation. Put aside the delegation clause. Mason still found the arbitration agreement to be viable. Even what the termination upon death clause correct. Yeah, because Mason said the claim accrued before the termination, correct and that's what I'm trying to say the negligence survival claim accrued even if taking your argument about termination, the negligence survival claim, and the wrongful death claim necessarily had to have accrued before the alleged termination of the contract and Mason the Mason court follow the Supreme Court decision and Carter. Isn't that correct. Yes. And are you aware that our Supreme Court granted the PLA in Clanton. I didn't hear that yet. Okay. And with the then the Supreme Court's decision in Clanton affect the issues we have in this case. Potentially, yes. Although, again, I would like to point out that Clanton did not have a delegation clause, and I hate to keep harping. Aside from that, if you want to put that aside. It did have termination on death clause, different than the discharge language here, but more similar to the language and Mason correct. So, the Clanton court came to a different conclusion and Mason so there are conflicting opinions with regard to the issue of the survivability of the arbitration clause, isn't that correct. Yes, I think that's. I'd like to ask my colleagues indulgence to ask one additional question if that's in regards to the delegation clause. What does it. I know Appley's dispute that there actually exists a delegation clause in this arbitration agreement in your remaining time here. What does the delegation clause say here. And I guess, part and parcel is where is that delegation clause. The delegation clauses right where the trial court found it, it's in the AAA rule seven of the commercial rules, and the court below quoted it verbatim it delegates all issues regarding the existence scope validity and arbitrability to the arbitrator. Okay, thank you. And you'll have time and rebuttal, Miss fudge, Miss Hamilton. This is your opportunity to address the court, and if you wouldn't mind. Could you just pick up on that last point, Miss fudge addressed and that being the existence of a delegation clause. Certainly your honor Thank you and may it please the court. With respect to the delegation clause and I think we set this out pretty thoroughly in our brief is that there. It's not quite as clear as Council states. If you look at the actual contract, and the arbitration provision that that two page document that's solely in italics, and I haven't marked it to see 254 and 255 in the record. There's nowhere in the contract itself, or in the arbitration provision does it. It's say that these parties are clearly and unmistakably agreeing to delegate the issue of arbitrability to the arbitrator. As the Supreme Court said that is absolutely what's required they want to make sure that the parties are knowingly and unequivocally agreeing that hey if there's any dispute as to whether or not we should be arbitrating, we are together agreeing that that Why would you submit to an arbitrator and issue whether or not something's arbitrable, it really should be that's the court's job to look at the contract to apply the law governing contracts made in Illinois, and to then make that decision. So, another issue that we pointed out that I found particularly problematic is that the language thing that it was going to be incorporating the, you know, rule seven of the arbitration rules. Number one that's not actually the language that's required by the rules themselves, as we indicated in our brief in pages 18 and 19. The rules say what what you're supposed to have in the contract if you want to fully incorporate those rules, and they talked about it's the commercial arbitration rules not consumer rights arbitration rules or other various arbitration rules. There was no mention in the contract or in the arbitration provision of which set of rules are we referring to or we incorporating. Not only that, but the rules that the appellant relies on saying that there's this delegation weren't actually made effective until October one of 2013 whereas the form that they generated and relied on was actually generated seven years prior to those rules being promulgated and being deemed effective. So, given the fact that the neither the contract nor the arbitration provision contain the rules that the arbitration will say they're supposed to have that disclaimer saying here's what we're doing we're incorporating everything. Given the seven year time lap, and given there's nowhere in there that they're saying by the way we're going to submit the issue of arbitrability to an arbitrator rather than a court in Illinois and Stevenson County where we're all having this dispute. I don't think that there's been clear and unmistakable evidence that the parties agreed to delegate this issue to the arbitrator. If that answers your question judge I apologize for the long winded answer. But more importantly, what, what is your position with regard to the language of discharge. And is that not equivalent to the death of the decedent so that they're one in the same event, let's say, under this under the facts here and under the contract. Justice I think they're absolutely the same and as your honor pointed out, the Supreme Court did just grant the PLA and the Clinton case a few days ago as we in preparing for today's argument, I did notice that. So I would, I would say that in the event that the Illinois Supreme Court decides to follow the reasoning of Clinton, as opposed to Mason. I think that's just positive as to the issue of this whole arbitrability issue because it would terminate in its entirety. Now if the Illinois Supreme Court decides to follow Mason and find that the termination of the contract does not necessarily terminate the arbitrability of the causes of action which are prior to death. Well then I still think your honors can affirm the findings of the trial court, based on the issues of procedural substantive unconscionability. That's why we argued for those as alternative basis, certainly if the Illinois Supreme Court comes out and says that planting is the rule then then we're done here, because everything would terminate in its entirety. The appellants in their brief they suggest a scenario that you know what would make it kind of dubious the, you know, your position if we were to follow it to its logical conclusion and here under this contract, a resident could terminate the, the agreement with 30 days notice right. Yes, that's correct. And if the president did that, and left owing money to the nursing home. According to your theory the arbitration agreement would be terminated. At that point, correct. That's correct. So, the nursing, the nursing homes ability to collect for the past do rent could not be by way of arbitration, because the arbitration agreement would be terminated under your theory. Certainly the way that the contract and the arbitration provisions are written I believe that would be the case and that they would have to litigate the matter and Stevenson county county just my client is doing. So you do agree that that would be the outcome under that scenario. I do justice I think I think that that's the way the contract is written, certainly there are other ways in which it could have been written that would have allowed for that scenario if they wanted to arbitrate the issue of fees, but as a judge source, you know indicated at the trial court level. He was kind of struggling to come up with a situation which the nursing home is actually going after a resident who is decided to leave and and has had unpaid fees because the nursing home is in a considerably better situation to ensure the payment of those fees. Also, given the fact that in this particular scenario over 75% of the residents for Medicaid recipients and the facility was receiving federal funding. The likelihood of that particular scenario seems seems to be small, but I would agree with your honor and and should that event arise. Yes, I believe that the nursing home would be required to file suit in the county. Thank you. Thank you. The Mason court follow Carter and looked at the when the survivability claims accrued and based on the reasoning in Carter and some of the discussion came to the conclusion that certainly, while the nursing home resident was alive, they were in a position to modify the arbitrability agreement, isn't that correct if they wanted to. That's what the court found yes justice. That's what the court and and on that basis, Mason came to the conclusion that it did that the arbitrability extended to claims that accrued prior to the residents death or discharge Yes, that's what the court found. And certainly the Illinois Supreme Court follows that same logic, then our argument about death terminating the contract would not be an alternative basis for your honors to affirm. Certainly, the Illinois Supreme Court agrees with with Clinton, then, then I think that's an easy basis to affirm, but we did include that argument just as just as an alternative and additional argument to affirm the trial courts ruling, because if you look through the record here that's not the only basis. And, and to your point justice enough, you know, finding a resident in a position to negotiate or to somehow alter the arbitrability provisions is really one of the issues that that the trial court took issue with, and his ruling, and in finding it specifically to be substantive substantively unconscionable under these unique facts and circumstances. You know the record demonstrates that we have an elderly woman who was being discharged from the hospital specifically the hospital told her son. We can't do anything else for her right now she's got to go. And right now, this facility is the only place that's responding the call saying that they have space for her. We've demonstrated on the record that he was presented with all these documents to sign and that it was his understanding that he had to sign all of them in order for his mother to be admitted. There's nowhere in the arbitration provision saying this is not a requirement for admission, or the facts the facts council show that this was an intelligent man who had a career, who made the choice to put her there. So you're not saying that this was procedurally unconscionable are you, I think that there's a basis for that as well justice simply because I think, you know, even the most intelligent people under situations of duress and extreme emotional distress can, you know, documents on the 10th, and they weren't signed until the 11th is the date on on his next to his signature is the 11th, I believe some of the documents are signed on the 11th somewhere on the 10th because he was moving his mother in the evening of the of the 10th, getting our clothes and whatnot. But I think more importantly, just as I think the you know that we've got several guidelines from the federal government and the federal regulations that we cited in our brief, and from the nursing home care act itself where the legislature has been very sure that residents are being made aware of their rights. And in this instance, I think that the trial court absolutely was correct in finding that by requiring a $1,500 initiation of arbitration fee, whereas the cost of file a complaint in Stephenson County is roughly $300 requiring the resident to bear the costs of paying for the arbitrators fees and not having any sort of end date and site. Looking at this arbitration clause, and whether it was whether there was unconscionability with regard to it. And accordingly, is there information in the record as to what her finances were. I don't believe there is information. Wasn't the trial court just talking about generally persons of no means without regard to Naomi and her personal finances. Now the trial court correctly noted that under the nursing home care act you're really not supposed to take into account any individuals, personal finances, you're just supposed to look at them as a resident of that nursing home. And that was a very nuanced distinction I think the trial court did a great job of going through that analysis and explaining that okay in this instance we do happen to know what her finances were but we really shouldn't because those are supposed to be confidential, and for purposes of the nursing home care act, it's irrelevant. And so, looking specifically at this arbitration provision. The trial court noted that these terms were unconscionable $1500 fee requiring the resident to incur all the expenses of the arbitrators, having a fee shifting provision, not letting the individual know by the way you're waiving your right to a jury trial and an appeal, having to pay your own fees, eliminating that fee shifting provision in favor of the resident which the nursing home care act was designed to to have that provision just to encourage individuals to bring claims to encourage attorneys to take claims that they might not through 89 explaining about how the nursing home care was designed to do the opposite of what a lot of these arbitration provisions tended to do and that's why he found it specifically to be unconscionable. The way it was written and the way it applied to these residents. So isn't there a difference. Also in this case in Mason, with the nature of the arbitration clause, noting that in Mason the arbitration clause, although not crystal clear seems to contain some reference to subsequent issues arising between the nursing home and the resident. For instance, the very first sentence, any actions you claim a controversy related to the quality of health care, etc. Now existing or hereafter arising. That would be arguably claim post discharge post death of tort action being brought us in this case, and say well that's a claim here after rising the subject to arbitration. We don't have anything like that. That language from Mason in this case. That is absolutely correct Josh that language does not exist in the contract or the arbitration provision that the facility prepared. There's Hamilton, again, relating to Mason and Clanton here opposing counsel. When discussing the accrual rights aspect of the, the Mason case that she cited to the, the Lytton versus NLRB case, page four of the reply brief and I wanted to ask you the, the quote there is that from Lytton is rights which accrued or bested under the agreement will as a general rule survive termination of the agreement. So that statement and Lytton would seem to support this courts holding in Mason wouldn't it. It would judge I would, I would note that Lytton was obviously a National Labor Relations Board dispute so it's certainly factually distinguishable. It also did not deal with the implications of the Illinois specific nursing home care act, which I think we that that is also a compelling factor, given that those are the laws that this court is being faced with and those were not before the US Supreme Court and Lytton. But I would agree that that general precept and that general that general understanding would would support the courts finding it Mason. I posed a hypothetical earlier to you about the non payment of rent and termination. I like to just switch it so that it's the resident that is terminating. Excuse me. The resident is actually injured suffers an injury doesn't die, but suffers an injury gives 30 days notice to terminate the contract and then following that files suit for personal injuries. And I think you agreed. Under the prior scenario that the arbitration agreement would be terminated. At that point, and the resident in the scenario I just described would be able to sue and state court. Is that right. That would be my, that would be my position certainly judge yes. The injury that she sustained would have been something that accrued during the, during the term of the agreement as described in Lytton though right that would have been an accrued right. If the resident in your hypothetical sustained an injury and then gave notice that he or she was going to be leaving 30 days later left, and then wanted to bring suit for the prior injury. Yes, yes, that is correct. It would have accrued prior. Well, so wouldn't Lytton then support the survivability of that arbitration agreement in that scenario. I would say no justice simply because of the policy implications that I've just discussed given the Illinois nursing home Care Act, and the policy that the legislature and these courts have placed upon caring for elderly and are more vulnerable population and giving them the opportunity to exercise their rights to the fullest except that the law allows. So I would, I would argue no that that resident would not be bound by an arbitration provision, simply because of determination and because of all the things that we've just discussed given the protections that the nursing home Care Act provides these elderly residents. Is there any significance to the difference in language and the residency agreements between the one in this case and the one in Clinton. In this case, the, the. It says that the term of the contract shall terminate the day the resident is discharged and in Clinton. It says this contract shall terminate immediately upon the residents that, and I'm just the distinction I'm pointing to is in Clinton it says this contract shall terminate. And in this case, it says the term of the contract shall terminate just in terms of that narrow difference is there any significance. I don't believe so judge and again I think it's just a statement pointed out, you know, we have an affidavit from the, you know, from the defund defendant appellants administrator saying that she was discharged on that same day so I'm, I don't, I don't think it's significant, whether you have a contract that says it terminates on death or terminates on discharge like this one. We've already gotten admission from them, and I wasn't being clear and I'm sorry, and I don't mean for you to focus on the discharge being tantamount to death here, but the, the actual phrasing of the contract, it says the term of the contract shall terminate. In this case, and in Clinton it says this contract shall terminate. The reason I'm asking this is because Clinton throughout that decision stresses the, the breadth of that statement in the contract. And in paragraph 62 it says we are simply giving effect to the contracts unequivocal language that all of its provisions terminate upon the residents death. And I just, I just wanted to find out from your perspective, is there a significance in the difference in the phrasing of the contracts here. I don't believe so, judging simply and I want to double check my record because I always like to triple check myself as opposed to relying on my own memory, but I don't believe that the phrasing of term of contract in this particular instance was that different or that significant as it compares to that which was in Clinton, but I can certainly double check that and submit something in Toronto like I see that I'm out of time. Justice Harris my ask a follow up question to yours please but related. Certainly. So, but with that answer change depending on whether the addendum was part of the contract opposing counsel we know argue that the addendum was not part of the contract. And so I think it was clear in Clinton, that there probably could be no question that it was actually part of the contract it wasn't listed as an addendum would that make a difference in your answer. No justice I think that the circumstances that we've we've set forth the evidence that's been presented demonstrates that you know when you have a set of documents that are all right together signed together explained together. These were absolutely all part of the same agreement they're part of the same transaction I don't think that you could possibly read them as separate documents in any way, especially given the testimony from the administrator and from the individuals that were involved here. I think that they'd have to be read together. Thank you. Thank you. All right. Thank you, Miss Hamilton, Miss fudge rebuttal argument. Yes. First of all, regarding the delegation clause issue again the estate failed to make any specific attack to that at the trial court level, and under the rent a center decision. It is too late for the estate to come at this appellate level and try to attack the validity of that delegation clause. I would also add that countless courts throughout the country, both state and federal from coast to coast, have found similar incorporation of rules like the triple A or jams to be clear and unmistakable delegation clauses. I would also argue that this debate over how to interpret the contract as to whether that's the commercial rules or the consumer rules is getting into interpretation issues that should be left to the arbitrator, and whether you look at the commercial rule seven, or the consumer rule 14 of the triple A, they both have the exact same delegation clause. So I need some clarification if I remember correctly I think the second question I asked you was. Do you view the arbitration addendum as part of one contract. Are we talking here about different contracts, namely, the initial contract and the arbitration provision as being separate. And I believe you said it's all one contract. Did you know. So we have the underlying council that that calls for a yes or no answer regarding something you said 30 minutes ago. The arbitration agreement is an addendum to the underlying residency agreement, however, under the FAA federal substantive law. My question was, are you contending that these are two separate contracts, or is the arbitration, then the provision, part of the same contract. It's part of the same contract but under the severability rule of the FAA in cases like Buckeye, the arbitration agreement is its own separate agreement as well that it's kind of, they're both concepts. All terms of a contract, their own separate agreements, because they're part of the contract. I didn't hear your question I'm sorry. All terms of a contract agreements because they are part of the contract, I mean, you know, that's a. That seems to be just a, I forget what the term is but we're talking about the contract provision if it's in the contract. It's combining provision of the contract, isn't it. And that's what you're saying the arbitration agreement was. I'm saying the arbitration agreement is a valid binding agreement. And I'm saying that under the FAA federal substantive law of arbitrability and arbitration agreement is severable from the remainder of the contract in which it is exist, and in our two page arbitration agreement. The delegation clause just that sentence is itself severable and stands on its own. Is my understanding correct that the nursing home wrote this contract. I don't know and it's not in the record. So you think it was perhaps the patient that she was coming in, who wrote the contract that she saw. I would be, I would, I would be speculating there's no information in the record. What's your inference Council. Oh my inferences that the resident herself Mrs nor did not write or type. I think that's a good guess. So my question is, is there any reason why the contract couldn't have been written with regard to the arbitration provision to say the arbitration provision contains no language stating that it survives. Well, the arbitration provision contains language saying it survives the termination of the contract. That would have been an easy sentence to include. I, it could have been included, but it's essentially an adhesion contract presented by the nursing home to the patient. Is there any reason why this absence shouldn't be held against the nursing home. Lots of reasons. First of all, when you mentioned adhesion contracts. First, you're talking about a concept of contract enforceability. I'm here trying to explain that we're only supposed to be talking about contract formation, that's the court's jurisdiction, and the court here found the making of an agreement to arbitrate it founded under the FAA and it has a delegation clause that The court's work with all due respect is done at that point, and the court should not be delving into issues of enforceability, such as whether there's procedural unconscionability and adhesion contracts or whether the son Nord really knew what he was doing, just like the court should not be engaging in substance of unconscionability analysis that is an enforceability issue, and has been delegated to the arbitrator. It is so important to understand the distinction as Justice Harris pointed out between the existence of this delegation clause on one hand, versus whether it continued to be enforceable after the moment it was first made and created. And once we find that it has been made all questions as to whether it was terminated sometime thereafter are issues, solely and only for the arbitrator to hear and decide. This is the concept. I'm sorry, but you may not have noticed, you're now out of time. Thank you. All right. Thank you, both the case will be taken under advisement, and we will issue a written decision.